USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/18/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
KELLIE WALKER,

                                        Plaintiff,

                -against-

TRIBOROUGH BRIDGE AND TUNNEL
AUTHORITY, D/B/A METROPOLITAN
TRANSPORTATION AUTHORITY BRIDGES
AND TUNNELS, VICTOR MUALLEM, and
SHARON GALLO-KOTCHER, IN THEIR
INDIVIDUAL AND PROFESSIONAL
CAPACITIES,

                                  Defendants.
-------------------------------------------------------------- X

21-CV-474 (VEC)

MEMORANDUM
OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

       Discrimination has no place in the workplace.  Anti-discrimination laws protect employees when they are subjected to disparate treatment, a hostile environment or retaliation at work on the basis of their protected characteristics.  But to avail herself of the protection of federal anti-discrimination laws, a plaintiff must plausibly allege that she suffered discrimination *because of* her protected characteristic(s).  Mere recitations of a plaintiff's membership in a protected class and a litany of incidents of poor treatment, without factual connections between the two, do not pass muster.  In this case, Plaintiff Kellie Walker ("Walker") asserts claims for race and gender discrimination, retaliation and hostile work environment against Triborough Bridge and Tunnel Authority ("TBTA"), Victor Muallem ("Muallem") and Sharon Gallo-Kotcher ("Gallo-Kotcher"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"); the Civil Rights Act of 1866, 41 U.S.C. § 1981 ("Section 1981"); and asserts state law claims of discrimination, assault, battery and negligent supervision and retention.

1

On January 19, 2021, Walker filed this case. *See* Compl., Dkt. 1. On May 11, 2021, Walker filed an Amended Complaint. *See* Am. Compl., Dkt. 28. On June 1, 2021, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Notice of Mot., Dkt. 30. On August 26, 2021, Walker filed a Second Amended Complaint ("SAC") with leave from the Court. *See* Order, Dkt. 38; SAC, Dkt. 39. By agreement of the parties, the Court has construed Defendants' Motion to Dismiss the Amended Complaint as applicable to the Second Amended Complaint. *See* Order, Dkt. 38. For the reasons discussed below, Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

Walker is a Black female employee in TBTA's Office of Labor Relations. SAC ¶¶ 33, 37. Walker initially reported directly to Muallem, a white male who is director of labor relations at TBTA. *Id.* ¶¶ 26, 39. After Walker complained about Muallem's supervision, Gallo-Kotcher, a white female who is vice president of labor relations at TBTA, began supervising her.[1] *Id.* ¶¶ 27, 41, 85, 89.

Walker alleges mistreatment by Muallem beginning in April 2019. According to Walker, Muallem emailed her "unwarranted and gratuitous criticisms" from April 2019 to December 2019, *id.* ¶ 51; initially denied days off requested by Walker, *id.* ¶ 52; "stormed" into Walker's office and "screamed . . . at the top of his lungs, criticizing" Walker's work, *id.* ¶ 53; repeatedly interrupted Walker's opening statement and "berated and belittled" Walker during an arbitration proceeding in January 2020, *id.* ¶¶ 56–58; and struck Walker with the back of his hand during an arbitration proceeding on February 3, 2020, *id.* ¶¶ 67–71. Following the alleged physical assault, Walker filed a Workplace Violence Incident form with Gallo-Kotcher on February 4, 2020, and

---

[1]   The Complaint does not clearly allege whether Walker's reporting relationship was ever officially changed.

an Incident Report with the New York City Police Department on February 5, 2020. *Id.* ¶¶ 82–83.

Walker alleges that after she asked that she not be put in physical proximity to Muallem, a "retaliation campaign" followed. After Gallo-Kotcher told Walker that she expected Walker to continue to work with and report to Muallem, at the end of February 2020 Walker sent a letter of representation to TBTA through counsel. *Id.* ¶¶ 85–88. Walker alleges that after she put in the request and sent the letter of representation, Gallo-Kotcher began to micromanage and mistreat her: Gallo-Kotcher allegedly commented on how many times Walker clocked in and out, *id.* ¶ 89; "excessively" reprimanded her for "a purported mistake" Walker had made five months prior, *id.* ¶ 91; required Walker to report on the status of all of her cases "within the hour," *id.* ¶ 92; "incessantly" asked Walker, but not other employees, about the status of her cases, *id.* ¶ 93; gave Walker no time to prepare for a meeting to discuss her disciplinary cases, *id.* ¶¶ 94–95; required Walker to work in the office when proceedings were being conducted virtually during the COVID-19 pandemic, *id.* ¶ 96–97; "purposefully" made references to Muallem in Walker's presence, *id.* ¶ 101; "nastily responded" to an email from Walker, *id.* ¶ 102; and failed to investigate another employee's screaming at Walker and gave that employee the "'benefit of the doubt,'" *id.* ¶¶ 103–105.

At some point (the exact date is not alleged in the Complaint), Walker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging Title VII violations. *Id.* ¶ 28. On or about July 28, 2021, Walker received a Notice of Right to Sue from EEOC. *Id.* ¶ 29.

# DISCUSSION

## I.  Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), courts "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014) (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (alterations omitted)). To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "At this stage, dismissal is appropriate only where [the plaintiff] can prove no set of facts consistent with the complaint that would entitle [her] to relief." *Meyer*, 761 F.3d at 249 (citation omitted).

## II.  Discrimination Claims

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under the *McDonnell Douglas* burden-shifting framework, to establish a *prima facie* case of employment discrimination under Title VII, the plaintiff "has the burden of establishing that (1) she is a member of a protected class; (2) she performed the job satisfactorily or was qualified for the position; (3) an adverse employment action took place; and (4) the action occurred under circumstances giving rise to an inference of discrimination." *Rasko v. New York City Admin. for*

4

*Children's Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) (citation omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[2] Employment discrimination claims brought under Title VII, Section 1981 and Section 1983 are all treated under the same *McDonnell Douglas* framework. *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011).

Because the *prima facie* case requirement is an evidentiary standard, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* . . . to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "[B]ecause a temporary presumption of discriminatory motivation is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* at 84 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

Under the relevant standard, therefore, Walker's claims will survive to the extent she has plausibly asserted facts supporting an inference of discrimination on account of her race or gender. Walker has not done so.

### A. Walker's Section 1981 Claims Are Encompassed by Section 1983

The Supreme Court has clarified that, with respect to state actors, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–34 (1989); *see also Bermudez*, 783 F. Supp. 2d at 576. "Public benefit corporations," like TBTA, are state actors for purposes of section 1983 claims. *See Rozenfeld v. MTA Bus Co.*, No. 13-CV-4847, 2015 WL 1174768, at *4 (S.D.N.Y. Mar. 16,

---

[2] Under the *McDonnell Douglas* framework, once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show a legitimate reason for its action. The burden then shifts back to the plaintiff to show that the defendant's explanation is a pretext for discrimination. *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (citations omitted).

2015). State employees are also state actors for the purposes of discrimination claims. *Roddini v. City Univ. of N.Y.*, No. 02-CV-4640, 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003) (holding that, under *Jett,* individuals sued in their individual capacities who are state actors must be sued under Section 1983 for violations of the rights guaranteed by Section 1981 (citations omitted)).

Thus, Walker's claims under Section 1981 are dismissed as against all Defendants.

### B. Title VII Gender Discrimination Claim

With respect to her Title VII gender discrimination claim against TBTA, *see* SAC ¶¶ 189–93, Walker must plausibly allege that (1) her employer took adverse action against her, and (2) her gender was a motivating factor in the employment decision. *Vega*, 801 F.3d at 87.

Defendants do not deny that Walker belongs to a protected class or that she was qualified for her position with TBTA. Rather, Defendants argue that Walker has failed to allege facts that could plausibly establish that "the alleged actions she complains of were motivated by discrimination" or that she suffered "a single adverse employment action." Defs. Mem., Dkt. 31 at 10–15.[3]

Walker alleges mistreatment by Muallem, including: screaming and shouting, berating and belittling, delays in approving time off, interruptions during arbitration proceedings and physical assault. SAC ¶¶ 52–53, 56, 58, 68. Walker also alleges micromanagement and mismanagement by Gallo-Kotcher, including: inquiring about and requiring Walker to report the status of her cases frequently, not giving Walker sufficient time to prepare for her disciplinary meeting, requiring Walker to work in-person at the office despite virtual proceedings and failing

---

[3] The Court need not address Defendants' argument that Walker has not alleged an adverse employment action because, as discussed below, she has failed to plead that Defendants acted with discriminatory intent.

to address Walker's complaint of another employee's misbehavior. SAC ¶¶ 92–97, 104–06. Walker does not, however, allege any connection between her gender and the mistreatment she allegedly suffered. In particular, she does not allege facts from which the Court could plausibly infer that she was targeted by Muallem or Gallo-Kotcher *because* she is a woman. Conclusory allegations such as "Muallem physically assaulted her because she is a Black woman," SAC ¶ 74, and "[i]t also shows that as a white male, he believed it was acceptable for him to subject a junior Black female employee to such horrific discrimination and humiliation," *id.* ¶ 59,[4] do not move the allegation that her poor treatment was the result of her gender "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Walker argues that a plausible inference of discriminatory intent can be established by "show[ing] a mosaic of intentional discrimination." Pl. Mem., Dkt. 35 at 16 (quoting *Khanna v. MUFG Union Bank*, 785 F. App'x 15, 16 (2d Cir. 2019) (internal quotation marks omitted)). A plaintiff may defeat a motion to dismiss in a discrimination case "by indirectly showing circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 87; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547–48 (2d Cir. 2010) ("Circumstantial evidence that facially sex-neutral incidents were part of a pattern of discrimination on the basis of gender may consist of evidence that 'the same individual' engaged in 'multiple acts of harassment, some overtly sexual and some not.'" (citation omitted)). Walker suggests gender-motivated discriminatory intent by pointing to allegations: regarding Muallem's weight, SAC ¶ 71; that it was "well-understood" that "Muallem believes his female colleagues should be subservient to him," *id.* ¶ 110; that Muallem had "regularly" described women at TBTA as "'irate,'

---

[4] The specific allegations against Muallem are almost entirely conclusory. Plaintiff's allegations against Gallo-Kotcher do not contain any allegations that draw a connection between Gallo-Kotcher's alleged actions and Walker's gender.

'aggressive' or 'rude,'" *id.* ¶ 112; and that other "women have regularly quit their employment . . . so that they do not have to endure the condescending and demeaning way in which Muallem interacts with them," *id.* ¶ 113.  The allegations that Muallem believed female employees should be subservient to him and that female employees left because of Muallem's treatment of them are entirely conclusory.  The remaining allegations do not raise a minimal inference of discriminatory intent.

Walker's allegations against Gallo-Kotcher and TBTA are even more threadbare.  Walker alleges that a third person "believed" that Gallo-Kotcher "impl[ied] that she was surprised that [a] young black female intern would be able to get into [a] prestigious college."  SAC ¶ 43.  Walker does not allege any additional facts that even remotely suggest that Gallo-Kotcher was motivated by gender animus.  An inference of discriminatory intent with respect to Gallo-Kotcher's treatment of Walker cannot stand on the basis of that third-hand comment alone.  *See Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 468 (2d Cir. 2001) ("[S]tray remarks of a decision-maker . . . cannot prove a claim of employment discrimination . . . without other indicia of discrimination . . . .").  Walker further alleges that a male, nonwhite colleague holding equal rank to Walker was given more significant responsibilities, had access to higher-level meetings and was never physically assaulted or otherwise mistreated by Muallem.  SAC ¶¶ 48–50, 98.  The fact that one other non-white male received more career opportunities does not allow a minimal inference of discriminatory intent.  To succeed on the better-access-to-opportunity claim, Walker must plausibly allege that the comparator is similarly situated to her "in all material respects."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citation omitted).  Walker failed to allege sufficient facts for the Court to infer that the non-white male was similar to her in all material respects.  *See Risco v. McHugh*, 868 F. Supp. 2d 75, 101 (S.D.N.Y. 2012) ("To prevail, a plaintiff must show that her employer offered the training to

8

similarly situated employees, and that she was denied that training under circumstances that give rise to an inference of discrimination.").

For all of these reasons, the Complaint does not adequately allege gender discrimination in violation of Title VII. Walker's gender discrimination claim pursuant to Title VII is, therefore, dismissed

### C. Section 1983 Race Discrimination Claims

To state a Section 1983 claim against a state employee, a plaintiff must plausibly allege: (1) a violation of constitutional or statutory rights; and (2) that the employee was acting "under color of state law." *Vega*, 801 F.3d at 88. Once the color of law requirement is met, Section 1983 claims are analyzed under the same *McDonnell Douglas* framework discussed above. *See id.* ("[F]or a § 1983 discrimination claim to survive . . . a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'").

One crucial difference between Section 1983 and Title VII claims is the causation standard. For Title VII claims, a plaintiff must plausibly allege that the prohibited conduct was a *motivating factor* in the employer's adverse action. *Id.* at 85–87. For Section 1983 claims, *but-for causation* is required and applicable at the pleadings stage. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021) (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020)); *see also Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019); *Urli v. Hempstead Sanitary Dist. No. 7*, No. 20-CV-960, 2021 WL 4311141, at *5 (E.D.N.Y. Sept. 22, 2021) (applying the but-for requirement to a motion to dismiss analysis in a discrimination case). Thus, Walker must plausibly allege that her race was a but-for cause of the alleged adverse employment actions she suffered.

There is no real dispute that Muallem and Gallo-Kotcher acted under color of state law because their direction and supervision of Walker were pursuant to their official duties at TBTA. *See Annis v. Cnty. of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994) ("There can be no question that defendants . . . are, in their personal capacities, amenable to suit under this statute, inasmuch as they were conducting themselves as supervisors for a public employer and thus were acting under color of state law.").

Similar to her gender discrimination claims, however, Walker's race discrimination claims contain nothing more than conclusory language that Defendants' alleged actions were motivated by discriminatory intent. Nothing in the well-pled factual allegations directly connects Defendants' actions to Walker's race. Conclusory allegations (such as "Muallem physically assaulted her because she is a Black woman," SAC ¶ 74) do not move the inference of discrimination "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

After eliminating the conclusory allegations, none of the remaining factual allegations supports a plausible inference that, but for Walker's race, Defendants would not have treated Walker the same way.[5]

Walker's race discrimination claims pursuant to Section 1983 are, therefore, dismissed.[6]

### III. Hostile Work Environment Claims

To state a hostile work environment claim, a plaintiff must plausibly allege that "the complained conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the

---

5   *See also supra* II(B).

6   Walker's Section 1983 claims may also be barred by qualified immunity. Because her claim fails for other reasons, however, the Court need not wade into the qualified immunity thicket.

plaintiff's [protected characteristics]." *Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141 (2d Cir. 2012) (citation omitted).

Section 1983 and Title VII cases are analyzed under the same burden-shifting *McDonnell Douglass* framework. *Naumovski*, 934 F.3d at 221 ("[F]or claims arising under [Title VII and Section 1983], the level of severity to demonstrate a hostile work environment is similar.")

To state a claim under Title VII for a hostile work environment, Plaintiff must allege facts from which the Court can plausibly infer that discrimination is a motivating factor in the mistreatment. *See Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 47 (2d Cir. 2018) ("This mistreatment [in hostile work environment claims] must have occurred because of [the] employee's protected characteristic, such as race or national origin, although the protected characteristic need not be 'the only motivating factor.'"). But-for causation is required for Section 1983 hostile work environment claims. *Naumovski*, 934 F.3d at 214 ("[C]ourts must account for a § 1983 plaintiff's higher burden of producing evidence from which a jury could infer that the individual's discriminatory intent was a 'but-for' cause of the adverse employment action.").

Similar to the discrimination claims discussed above, Walker has not plausibly alleged that gender or racial animus was a motivating factor behind Defendants' alleged actions. Thus, although Plaintiff has more than adequately alleged a hostile and abusive work environment, both subjectively and objectively, she failed entirely to allege facts from which the Court can reasonably infer that her race or gender was a motivating factor (let alone the-but for cause) for the mistreatment.

Accordingly, Plaintiff's hostile work environment claims under both Title VII and Section 1983 are dismissed.

11

**IV.     Retaliation Claims**

To state a claim for retaliation pursuant to Title VII or Section 1983, a plaintiff must plausibly allege that: "(1) defendants discriminated—or took an adverse employment action—against [the plaintiff], (2) because [the plaintiff] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. Title VII and Section 1983 retaliation claims are again analyzed under the *McDonnell Douglas* framework. *Id.* at 88. For purposes of a retaliation claim, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "Retaliation occurs when an employer takes action against an employee not because of his ethnicity, but because he engaged in protected activity—complaining about or otherwise opposing discrimination." *Id.* at 91.

Walker failed to allege that she engaged in a protected activity. Although Walker alleges that she made a number of complaints, there is no allegation that she ever complained about gender or racial discrimination. Walker has not alleged that the Workplace Violence Incident form that she filed with TBTA, the Incident Report that she filed with the police department, her request to not be placed in physical proximity with Muallem, or her letter of representation to TBTA drew any connection between the poor treatment about which she was complaining and her race or gender. *See* SAC ¶¶ 82–83, 85–88. Additionally, Walker has not alleged that she reported the actions of individual Defendants to other TBTA supervisors. And it does not appear that Walker filed a Charge of Discrimination with EEOC before the alleged retaliatory actions occurred.[7] "Generalized complaints about a supervisor's treatment are insufficient" to qualify as

---

[7] The Complaint does not allege the date on which the Charge of Discrimination was filed, even though all other actions Walker alleged to establish that she engaged in a protected activity were dated. *See* SAC ¶¶ 28, 82–83.

12

a protected activity for purposes of retaliation claims. *Risco*, 868 F. Supp. 2d at 110 (quoting *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)). Walker's Section 1983 and Title VII retaliation claims are, therefore, dismissed.

V.      ***Monell* Claims**

Pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, a municipal entity may only be held liable under Section 1983 if the plaintiff demonstrates that the alleged violation was caused by a municipal "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." 436 U.S. 658, 694 (1978). Policy or custom includes "the decisions of a government's lawmakers, the acts of its policymaking officials," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), and "persistent and widespread" practices that have become "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691.

Walker did not allege any policy or custom by TBTA in her SAC, which offered nothing more than two passing, conclusory comments about "patterns" of discrimination and tortious conduct.[8] SAC ¶¶ 132, 182. In her brief in opposition to Defendants' Motion to Dismiss, Walker argues for the first time that TBTA was put on notice of Muallem and Gallo-Kotcher's behavior and therefore maintained a policy by "tolerating discrimination and harassment." Pl. Opp. at 21–22 (citations omitted). For a practice to rise to the level of "official policy," however, it must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297–98 (2d Cir. 2020). Walker's conclusory allegations do not suffice.

---

[8] Walker did not allege with any specificity how the isolated incidents discussed in the complaint constitute "patterns of discrimination." *See* SAC ¶¶ 132, 182.

All of Walker's Section 1983 claims against TBTA and against individual Defendants in their official capacities are, therefore, dismissed.

## VI.        Remaining State Law Claims

With the federal question claims dismissed, the Second Circuit counsels district courts to dismiss state law claims that are based solely on the Court's supplemental jurisdiction. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004); *see also Boustany v. Xylem Inc.*, 235 F. Supp. 3d 486, 496–97 (S.D.N.Y. 2017) ("Having dismissed all of Plaintiff's claims that were based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims."). The Court declines to exercise supplemental jurisdiction over the remaining claims.

All of Walker's state law claims are, therefore, dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. Walker's Section 1981, Section 1983 and Title VII claims are DISMISSED with prejudice. Walker's state law claims are DISMISSED without prejudice. The Clerk of Court is respectfully requested to close the open motion at docket entry number 30.

**SO ORDERED.**

Date:  November 18, 2021  
New York, NY

_____
VALERIE CAPRONI
United States District Judge